**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **NATHANIEL BUCHANAN** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action No. 5:26-cv-1846** |
| **v.** | § | |
| | § | |
| **OUR LADY OF THE LAKE UNIVERSITY** | § | **JURY DEMANDED** |
| **OF SAN ANTONIO** | § | |
| **And** | § | |
| **RAMON ZERTUCHE, Individually** | § | |
| | § | |
| **Defendants** | § | |

**ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW Plaintiff NATHANIEL BUCHANAN, by and through his undersigned attorney of record, and sues Defendant OUR LADY OF THE LAKE UNIVERSITY OF SAN ANTONIO (University) for intentional and willful violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq*. ("ADA"), and 42 U.S.C. § 1981. Plaintiff also sues RAMON ZERTUCHE ("ZERTUCHE"), Individually, for intentional and willful violations of 42 U.S.C. § 1981. For cause of action, Plaintiff would show as follows:

## I. PARTIES, JURISDICTION AND VENUE

1. Plaintiff NATAHNIEL BUCHANAN is an individual and is a resident of the State of Texas. Plaintiff resides in Bexar County, Texas.

2. Defendant OUR LADY OF THE LAKE UNIVERSITY OF SAN ANTONIO is a Domestic Nonprofit Corporation doing business in the State of Texas. This Defendant can be

served with process by serving its registered agent for service of process, Edith T. Cogdell, 411 SW 24th Street, San Antonio, Texas 78207.

3. Defendant RAMON ZERTUCHE is an individual who resides in the State of Texas and who may be served with process at his place of employment, OUR LADY OF THE LAKE UNIVERSITY OF SAN ANTONIO, 411 S.W. 24th Street, San Antonio, Texas 78207.

4. This Court has subject matter Jurisdiction under 28 U.S.C. § 1343(a)(4) and 28 U.S.C. § 1331 because this civil action arises under the Constitution, laws, or treaties of the United States; specifically, Civil Rights Act of 1964 (as amended), 42 U.S.C. §§ 2000e *et seq*. ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq*. and 42 U.S.C. **§** 1981.

5. This Court has personal jurisdiction over Defendants because Defendants conduct business in Texas and have entered into relationships with Plaintiff in Texas and/or committed actions in Texas that give rise to this cause of action.

6. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in such district.

## II. ADMINISTRATIVE PROCEDURES

7. Plaintiff filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission ("EEOC") on, or about, September 27, 2023, alleging discrimination based on race, color, national origin, and disability. On September 12, 2025, the EEOC issued its Determination in which it found reasonable cause to believe the University had discharged Plaintiff in retaliation for engaging in protected activity in violation of Title VII. Attempts at conciliation failed and the EEOC issued it Notice of Right to Sue Letter on December 31, 2025. This action is being commenced within the required statutory time limits as the charge was timely filed with the

EEOC and this matter is being filed within 90 days of receipt of the Notice of Right to Sue Letter issued by the EEOC.

## III. FACTUAL BACKGROUND

8. Our Lady of the Lake University is a private university located in San Antonio, Texas.

9. TLE is an "employer" as defined by Title VII and the ADA.

10. At all relevant times Defendant has employed fifteen or more employees.

11. At all relevant times Defendant has been an employer engaged in an industry affecting commerce under sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h), and the Americans with Disabilities Act, 42 U.S.C.A. § 12111.

12. Plaintiff was an "employee" as defined by Title VII and the ADA when he worked for the University.

13. Plaintiff is licensed as a Peace Officer by the State of Texas.

14. Plaintiff began employment with the University as a police officer in the University's Police Department on or about May 1, 2023.

15. Plaintiff is a light skinned, multi-race Hispanic.

16. Plaintiff appears to be Caucasian and has a Caucasian surname.

17. Plaintiff's supervisors and coworkers were predominately darker skinned Hispanics with Hispanic surnames.

18. Ramone Zertuche is Chief of the University's Police Department and is a supervisor of Plaintiff.

19. Robert Munoz is a Lieutenant in the University's Police Department and is a supervisor of Plaintiff.

20. Plaintiff suffers from Pseudo Folliculitis Barbae which is a disability under the Americans With Disabilities Act.

21. Pseudo Folliculitis Barbae can cause shaving to be painful and may cause infections and scarring.

22. At or near the time he was hired, Plaintiff requested that he be permitted to wear a neatly trimmed beard as an accommodation for his disability. Lt. Munoz denied this request. Plaintiff persisted and the accommodation was ultimately granted.

23. On his first day of work, Chief Zertuche told Plaintiff that the Department was very family-oriented and that he could bring his family on-campus to use the facilities, such as the gym and pool, as long as it did not disrupt OLLU activities.

24. Chief Zertuche also told him that he could eat meals on campus with his family.

25. During his employment with Defendant, Plaintiff witnessed several other officers allow their families to use the facilities or eat meals with family members, including Lt. Munoz and Officer Paul Trevino, both darker-skinned Hispanics.

26. However, soon after becoming employed, Plaintiff realized that he was experiencing treatment different than that of the dark-skinned Hispanic officers.

27. For example, when he was hired, Mr. Buchanan was told that officers were not allowed to work off-duty jobs during their probationary period, which is the first 90 days of employment. However, Officer Paul Trevino, who was still in his probationary period of employment, was allowed to take off-duty jobs. Paul Diaz, who was interviewing for a position as an officer, told Plaintiff that he had been told he would be able to work off-duty jobs during his probationary period and Officer Diaz was in fact allowed to work off-duty assignments during his probationary period. Both are darker skinned Hispanics.

28. Plaintiff also noticed that darker skinned Hispanic officers were allowed to park their vehicles in places where he was not or were not reprimanded for parking in no-parking zones. Specifically, Plaintiff was verbally reprimanded by both Seargeant Ruben Gomez (a supervisor of Plaintiff) and Lt. Munoz for parking in a no-parking zone. Officers Trevino, Acuna, Sgt. Mendoza, and other officers parked in no-parking zones and were not verbally reprimanded. In fact, Sgt. Mendoza scolded Plaintiff regarding this parking issue. Plaintiff also parked in several other places where he had seen other officers park their vehicles but was then told he could not park in those places.

29. On or about June 24, 2023, Sgt. Mendoza and Plaintiff were called to a dorm to break up a party. Most of the people at the party were black. When Sgt. Mendoza and Mr. Buchanan returned to the office after breaking up the party, Sgt. Mendoza told Officer Rosanne Villarreal about the incident while Plaintiff was present. During this conversation with Officer Villarreal, Sgt. Mendoza referred to Mr. Buchanan as a "skinhead." Mr. Buchanan also heard Sgt. Mendoza call the people at the party "pinches negros" while talking to Lt. Munoz on the phone.

30. On June 24, 2023, Plaintiff asked to speak to Lt. Munoz. He told Lt. Munoz that he felt like he was being discriminated against because other dark-skinned Hispanic officers were allowed to work off-duty during their probationary periods while he was not. Plaintiff also told Lt. Munoz that he believed that he was being singled out by Sgt. Gomez and Sgt. Mendoza to be publicly reprimanded for parking in no-parking zones because he was white, and other dark-skinned officers were not publicly reprimanded for parking in no-parking zones. In response, Lt. Munoz told Mr. Buchanan that he was being petty and that he was "embellishing something that's not there."

31. Plaintiff was off work on June 25 and June 26, 2023. During these days off, a friend and former colleague of Mr. Buchanan at the Bexar County Sheriff's Office, Rose Farias, told him that she had heard from Mary Saenz, a sergeant who worked off-duty, part-time at the University, that Lt. Munoz was asking Officer Saenz for dirt on Plaintiff and trying to find a way to get rid of him because he didn't like it when Plaintiff complained to him of discrimination.

32. On June 27, 2023, Plaintiff asked to speak to Lt. Munoz again. Plaintiff asked Lt. Munoz if they wanted to get rid of him. Plaintiff told Lt. Munoz that he had heard Lt. Munoz and Chief Zertuche were upset about his beard and that he had questioned them about the part-time jobs. Lt. Munoz did not deny this had happened. Instead, Lt. Munoz said he didn't have the time or energy to entertain this. Lt. Munoz also called Plaintiff's complaints a "witch hunt." Mr. Buchanan told Lt. Munoz that he still felt discriminated against and told him about the incident where Sgt. Mendoza had called him a skinhead and referred to black students as pinches negros. Lt. Munoz told Plaintiff he was tired of his accusations and assumptions.

33. On June 29, 2023, Plaintiff called Chief Zertuche and asked if he could meet with him. On June 30, 2023, Plaintiff went to meet with Chief Zertuche to talk to him about what he was experiencing. Lt. Munoz was also at the meeting. Plaintiff told Chief Zertuche that he did not think it was fair that Officers Trevino and Diaz were able to work off-duty during their probationary periods. Plaintiff also told Chief Zertuche that Sgt. Mendoza had called him a skinhead. Plaintiff informed Chief Zertuche of his unfair and discriminatory treatment. In response, Chief Zertuche told Plaintiff that he was "not a fit" for the Department and terminated his employment.

34. Additionally, prior to and/or after Plaintiff's termination, Chief Zertuche and others created false and defamatory documents and caused them to be placed in Plaintiff's personnel file

fully aware that such would be required to be disclosed to subsequent prospective law enforcement employers and have yet to remove these false and defamatory documents.

## IV. CLAIMS FOR RELIEF:

### A. Discrimination by the University Based on Race, Color, and/or National Origin [Violation of 42 U.S.C. § 2000e-2(a)]

35. Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 - 34 as though fully set forth at length herein.

36. During most of Plaintiff's employment with Defendant and continuing until the termination of such employment, Defendant engaged in unlawful employment practices in violation of 42 U.S.C. § 2000e-2(a) because of race, color, and/or national origin.

37. Defendant subjected Plaintiff to a hostile work environment based on his race, color, and/or national origin.

38. Defendant did not exercise reasonable care to prevent and correct promptly any such harassing behavior in the workplace. Plaintiff did not unreasonably fail to take advantage of any preventative or corrective opportunities provided by Defendant.

39. During Plaintiff's employment, Defendant knew of or in the exercise of reasonable care should have known of the hostile or offensive work environment because of race, color, and/or national origin that was suffered by Plaintiff. Plaintiff complained to Defendant about the hostile or offensive work environment and that the environment was openly hostile to him, but Defendant negligently failed to take timely preventative or remedial actions.

40. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and to otherwise adversely affect his status as an employee because of his race, color, and/or national origin.

41. The unlawful employment practices complained of above were intentional.

42. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

**B. Retaliation by the University-Race, Color, National Origin**
**[Violation of 42 U.S.C. § 2000e-2(a) and 42 U.S.C. § 2000e-3(a)]**

43. Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 - 34 as though fully set forth at length herein.

44. During most of Plaintiff's employment with Defendant and continuing until the termination of such employment, Defendant engaged in unlawful retaliatory employment practices in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a) because Plaintiff opposed unlawful employment practices, including discrimination because of race, color, and/or national origin.

45. Plaintiff complained to Defendant about the discrimination because of race, color, and/or national origin and, as a result, suffered adverse terms and conditions of employment because he opposed the discrimination. Specifically, Plaintiff's employment was terminated.

46. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and to otherwise adversely affect his status as an employee because he opposed Defendant's unlawful employment practices.

47. The unlawful employment practices complained of above were intentional.

48. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

### C. Discrimination by the University Based on Disability [Violation of 42 U.S.C. § 12112(a)]

49. Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 - 34 as though fully set forth at length herein.

50. During most of Plaintiff's employment with Defendant and continuing until the termination of such employment, Defendant engaged in unlawful employment practices in violation of 42 U.S.C. § 12112(a) because of Plaintiff's disability.

51. Defendant subjected Plaintiff to a hostile work environment based on his disability.

52. Defendant did not exercise reasonable care to prevent and correct promptly any such harassing behavior in the workplace. Plaintiff did not unreasonably fail to take advantage of any preventative or corrective opportunities provided by Defendant.

53. During Plaintiff's employment, Defendant knew of or in the exercise of reasonable care should have known of the hostile or offensive work environment because of Plaintiff's disability that was suffered by Plaintiff. Plaintiff complained to Defendant about the hostile or offensive work environment and that the environment was openly hostile to him, but Defendant negligently failed to take timely preventative or remedial actions.

54. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and to otherwise adversely affect his status as an employee because of his disability.

55. The unlawful employment practices complained of above were intentional.

56. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

### D. Retaliation by the University-Disability
### [Violation of 42 U.S.C. § 12203(a)(b)]

57. Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 - 34 as though fully set forth at length herein.

58. During most of Plaintiff's employment with Defendant and continuing until the termination of such employment, Defendant engaged in unlawful retaliatory employment practices in violation of 42 U.S.C. § 12203(a)(b) because Plaintiff engaged in protected activity under the ADA.

59. In requesting accommodation, Plaintiff engaged in protected activity.

60. Plaintiff complained to Defendant about the discrimination and hostile work environment because of his disability, which also qualifies as a protected activity.

61. As the result of having engaged in protected activity, Plaintiff suffered adverse terms and conditions of employment. Specifically, Plaintif's employment was terminated.

62. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and to otherwise adversely affect his status as an employee because he opposed Defendant's unlawful employment practices.

63. The unlawful employment practices complained of above were intentional.

64. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

### E. Discrimination by the University and Zertuche Based on Race, Color, Ethnicity, and/or National Origin
### [Violation of 42 U.S.C. § 1981]

65. Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 - 34 as though fully set forth at length herein.

66. 42 U.S.C. §1981 prohibits race discrimination in the making and enforcing of contracts, including the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges and conditions of the contractual relationship.

67. The University intentionally discriminated against Plaintiff because of his race, color, ethnicity, and/or national origin in violation of 42 U.S.C. §1981 by harassing him, depriving him of benefits and privileges, and by unlawfully discharging him. The unlawful practices committed by Defendant were and are a direct cause of Plaintiff's damages, as more fully set forth below.

68. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

69. Chief Ramon Zertuche was personally involved in the conduct complained of herein. Chief Zertuche made the decision to terminate and in fact did terminate Plaintiff's employment. Accordingly, Chief Zertuchi is individually liable for race discrimination in violation of 42 U.S.C. §1981.

**F. Retaliation by the University and Zertuche Based on Race, Color, Ethnicity, and/or National Origin**
**[Violation of 42 U.S.C. § 1981]**

70. Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 - 34 as though fully set forth at length herein.

71. During most of Plaintiff's employment with Defendant and continuing until the termination of such employment, Defendant engaged in unlawful retaliatory employment practices in violation of 42 U.S.C. § 1981 because Plaintiff opposed unlawful employment practices, including discrimination because of race, color, ethnicity, and/or national origin.

72. Plaintiff complained to Defendant about the discrimination because of race, color, ethnicity, and/or national origin and, as a result, suffered adverse terms and conditions of employment because he opposed the discrimination. Specifically, Plaintiff's employment was terminated.

73. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and to otherwise adversely affect his status as an employee because he opposed Defendant's unlawful employment practices.

74. The unlawful employment practices complained of above were intentional.

75. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

76. Chief Ramon Zertuche was personally involved in the conduct complained of herein. Chief Zertuche made the decision to terminate and in fact did terminate Plaintiff's employment. Accordingly, Chief Zertuchi is individually liable for race discrimination in violation of 42 U.S.C. §1981.

**G. Request for Injunctive Relief**
**[42 U.S.C. § 2000e-5(g)]**

77. Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 - 34 as though fully set forth at length herein.

78. The conduct of the University as alleged herein was intentional and Plaintiff requests that the University be enjoined from engaging in such unlawful employment practices and that the Court order such other affirmative action as the Court may deem appropriate.

79. Injunctive relief is sought pursuant to Section 706(g) of Title VII, 42 U.S.C. § 2000e-5(g).

## V. DAMAGES

80. As a result of Defendants' violations as set forth herein, Plaintiff has suffered mental anguish, emotional pain and suffering, inconvenience, loss of enjoyment of life, and actual damages in the form of lost wages and benefits (past and future), and other losses.

81. As a result of these violations as set forth herein, Plaintiff requests that he be awarded all compensatory and punitive damages to which he is entitled, as well as all equitable relief, attorney's fees, and costs.

82. Damages are sought pursuant to all applicable state and federal statutes including, but not limited to, 42 U.S.C. § 1981a.

## VI. JURY TRIAL DEMAND

83. Plaintiff demands a jury trial on all issues so triable.

## VII. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that all Defendants be cited to appear and answer, and that on final trial, Plaintiff have judgment against Defendants jointly and severally as follows:

a. Determining that Defendants engaged in unlawful intentional discriminatory employment practices as alleged herein;

b. Determining that Defendants engaged in discriminatory employment practices with malice or with reckless indifference to the federally protected rights of Plaintiff, and with conscious disregard to such rights;

c. Determining that Defendants engaged in discriminatory employment practices knowing their conduct was unlawful;

d. Enjoining Defendants from engaging in such unlawful employment practices and ordering such affirmative action as the Court may deem appropriate;

e. Awarding Plaintiff back pay and benefits;

f. Awarding Plaintiff front pay and benefits;

g. Awarding Plaintiff compensatory damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life;

h. Awarding Plaintiff punitive damages;

i. Awarding Plaintiff pre- and post-judgment interest;

j. Awarding Plaintiff costs and expenses, including reasonable attorney's fees and expert's fees;

k. Awarding Plaintiff pecuniary damages for costs related to seeking subsequent employment; and

l. The award of such other and further relief, both at law and in equity, to which Plaintiff may be justly entitled.

Respectfully submitted:

By: *<u>/s/ David G. Langenfeld</u>*
**David G. Langenfeld**
Attorney-in-Charge
State Bar No. 11911325
KEY LAW OFFICE
1760 FM 967, Suite A
Buda, TX 78610
Tel.: (512) 688-6709
Fax: (512) 727-3324
Email: david@keylawoffice.com

**ATTORNEY FOR PLAINTIFF**